# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ULYSSES ALEXANDER RIOS,<br><br>Petitioner,<br><br>v.<br><br>RON GODWIN, Acting Warden,[1]<br><br>Respondent. | Case No. 15-1357-BLF (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; INSTRUCTIONS TO CLERK** |

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2013 criminal judgment. The Second Amended Petition, filed on July 19, 2017, is the operative petition. Dkt. No. 34 ("Petition"). Respondent filed an answer on the merits. Dkt. No. 44 ("Answer"). Petitioner filed a traverse. Dkt. No. 55 ("Traverse"). For the reasons set forth below, the petition is **DENIED**.

## I. BACKGROUND

Petitioner pleaded no contest to forcible rape (count one), simple kidnapping (count three), and assault with intent to commit rape (count five), on August 14, 2013. Ans., Ex. 1, Dkt. 44-3 at 142-43;[2] *see also* Cal. Penal Code §§ 261(a)(2), 207(a), 220. Petitioner was sentenced to six years for count one, five years for count three, and four years for count five, for a total of 15 years. *Id.* Appellate counsel filed a brief indicating that there were

---

[1] Scott Frauenheim, the previous warden of Pleasant Valley State Prison, where Petitioner is incarcerated, was originally named as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ron Godwin, the current acting warden of Pleasant Valley State Prison, is hereby SUBSTITUTED as respondent in place of Petitioner's prior custodian.
[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

no issues to be raised on appeal. Ans, Ex. 4, Dkt. 44-7 at 10. On July 17, 2014, the California Court of Appeal ("state appellate court") affirmed the judgment. *See* Ans., Ex. 5, Dkt. 44-7 at 16, *see also People v. Rios*, No. H040478, 2014 WL 3529988 (Cal. Ct. App. July 17, 2014). Petitioner filed his first petition for writ of habeas corpus (S221004) to the California Supreme Court on September 4, 2014. Ans., Ex. 6, Dkt. 44-7 at 23. The California Supreme Court summarily denied the petition on November 12, 2014. Ans., Ex. 7, Dkt. 44-7 at 35. Petitioner filed his second petition for writ of habeas corpus (S229844) to the California Supreme Court on October 8, 2015, which was summarily denied on January 20, 2016. Ans., Exs. 8-9, Dkt. 44-7 at 37, 54. Petitioner filed his third petition for writ of habeas corpus (S233348) to the California Supreme Court on March 28, 2016, which was summarily denied on May 25, 2016. Ans., Exs. 10, 12, Dkt. 44-7 at 56, 135. Petitioner filed his fourth petition for writ of habeas corpus (S238056) on October 28, 2016, which was summarily denied on December 21, 2016. Ans., Exs. 12-13, Dkt. 44-7 at 94, 138. On July 19, 2017, Petitioner filed the instant second amended habeas petition.[3]

---

[3] Petitioner first filed his original petition in this case in April 2015. Dkt. 5. In July 2015, United States Magistrate Judge Paul Grewal ordered petitioner to show cause why the petition should not be denied for failure to exhaust state court remedies via state habeas. Dkt. 7. Petitioner filed a motion to stay the case in September 2015, informing the Court that he had filed a petition in the California Supreme Court in August 2014 raising ineffective assistance claims. Dkt. 8. In September 2015, Magistrate Judge Grewal ordered Respondent to show cause why the petition should not be granted. Dkt. 9. The case was subsequently reassigned, after which Respondent requested and received an extension of time to file an answer. Dkt. 13, 14. In January 2016, Respondent filed a motion to dismiss the petition, based in part on Petitioner's alleged failure to exhaust his claim of appellate ineffective assistance. Dkt. 15. Petitioner filed an opposition, and in April 2016 requested a stay in order to exhaust that claim. Dkt. 18. This Court denied the motion to dismiss and granted the motion for stay and abeyance in August 2016, ordering Petitioner to file an amended petition excluding unexhausted claims within 30 days, to be reattached after conclusion of state exhaustion. Dkt. 21. Petitioner filed the amended petition in January 2017 after several extensions of time. Dkt. 28. This Court stayed the case in April 2017 and instructed Petitioner to file a motion to reopen the case and a second amended petition after receiving a decision from the California Supreme Court on his appellate ineffective assistance claims. Dkt. 29. Petitioner notified the Court in May 2017 that his claims had been exhausted since December 2016, but he had mis-labeled some of his prior filings to the Court, obfuscating that fact. Dkt. 30. The Court ordered Petitioner to file his second amended petition. Dkt. 31. Petitioner did so in July 2017, and re-filed it in September 2018. Dkt. 34, 35. Petitioner submitted a letter to the Court in March 2020 asking the status of the case. Dkt. 40. The Court reopened the case, lifted the stay, and ordered Respondent to show cause in March 2020. Dkt. 39. Respondent filed an answer in June 2020. Dkt. 44. Petitioner sought extensions of time as well as a stay

## II.  STATEMENT OF FACTS

The following background facts are from the opinion of the state appellate court on direct appeal:

> Late one evening in August 2012, victim 1, a 59–year–old woman, was walking home because she missed the last bus. A man, who she identified at the preliminary hearing as Rios, approached her and offered her a ride home. She accepted. Rios drove victim 1 in the wrong direction and ignored her pleas to pull over and let her out. Eventually, Rios stopped outside a house and told victim 1, "I'm just going to have quick sex with you and then I'll take you home." Victim 1 ran away. Rios followed her in his vehicle until she flagged down another car. Victim 1 acknowledged that Rios never displayed any weapons or touched her during the incident. She did not report the incident to police, believing no crime had been committed.
>
> Two months later, on October 4, 2012, Rios approached victim 1 again while she was waiting at a bus stop. Recognizing Rios, victim 1 walked towards a nearby Burger King. On her way, she saw the vehicle from the August incident parked near the Burger King and took a picture of its license plate with her cell phone. Rios, who had followed her, grabbed her arm and tried to take her phone. Following a brief struggle, victim 1 got away and ran to the Burger King where a customer called the police. The probation report's summary of the police report is consistent with victim 1's testimony at the preliminary hearing.[4]
>
> On October 11, 2012, victim 2, a 20–year–old woman, was waiting at a bus stop when a man she did not know pulled up in his car and started a conversation with her. At the preliminary hearing, victim 2 identified the man as Rios. Victim 2 got into Rios's vehicle and the two went to a couple of stores together and took shots of vodka in the car. Rios then drove victim 2 to a place she was not familiar with and stopped the car at the side of the road near a lake. The two kissed for a while. Rios touched victim 2's breast and she pushed his hand away and said she wanted to go home. Rios did not take her home, instead persisting in his advances. At some point, victim 2 took a pocket knife out of her purse and threatened Rios with it. Rios took the knife away and drove victim 2 to a second location. By this point, victim 2 was "very intoxicated" and she remembered few details at the preliminary hearing. Eventually, the two ended up in the backseat of the vehicle where victim 2 said Rios raped her. After unsuccessfully trying to push Rios off her, victim 2 told him to "get it over with." Victim 2 then accompanied Rios to his friend's house. After a few hours, he took her home. She told her father what had happened and he called the police. The

---

because of COVID-19 and ultimately filed a traverse in June 2021.  Dkt. 55.
[4] Respondent omitted the probation report from its exhibits to the Answer.  *See* Not. of Electronic Lodging of Exhibits, Dkt. 44-2.

3

probation report's summary of the police report is consistent with victim 2's preliminary hearing testimony.

. . .

The Santa Clara County District Attorney filed an information on July 11, 2013, charging Rios with forcible rape (§ 261, subd. (a)(2), count 1), kidnapping with the intent to commit rape (§ 209, subd. (b)(1), count 2), simple kidnapping (§ 207, subd. (a), count 3), and attempted robbery (§§ 664, 211, 212.5, subd. (c), count 4). On August 14, 2013, the prosecutor amended the information to add a fifth count, assault with intent to commit rape (§ 220). That same day, Rios pleaded no contest to counts 1, 3, and 5—forcible rape, simple kidnapping, and assault with intent to commit rape.

Prior to sentencing, Rios moved to withdraw his plea and for substitution of his appointed counsel, Phong Do, under *Marsden*.[5] In that motion, Rios stated that Mr. Do had "wrongfully encouraged" and "pushed" him into accepting the plea agreement. Rios also pointed to inconsistencies between victim 1's statements to police and her preliminary hearing testimony. In particular, Rios claimed that one police report indicated that victim 1 reported having been raped by Rios, while a second police report, and victim 1's testimony, indicated that he had not assaulted or threatened her.

On November 22, 2013, the trial court held a hearing in closed court on the *Marsden* motion. At the hearing, Rios added that attorney Do had failed to provide him with the full police reports and preliminary hearing transcript, despite his request. Mr. Do responded that, in plea negotiations prior to the preliminary hearing, the district attorney proposed a sentence of at least 30 years. After the preliminary hearing, the district attorney offered 15 years eight months. Mr. Do stated that he had discussed the offer with Rios during two in-person meetings, he had countered the district attorney's offer with a deal for 12 years at Rios's request, and Rios had agreed to a deal for 15 years. Mr. Do noted that Rios was charged with two counts that each carried a potential life sentence. As to the claimed inconsistencies in victim 1's statements, Mr. Do explained that no police report indicated that victim 1 ever claimed Rios raped her. Mr. Do stated that he and Rios "discussed all of the possible areas that we could bring up inconsistencies" to attack the People's case. He further indicated that, "because of how some of the evidence came out at the preliminary hearing, the offer from the district attorney dropped dramatically" from over 30 years to 15 years. Finally, Mr. Do stated that a note in his file indicated that a prior attorney had sent a redacted police report to Rios. The court denied the *Marsden* motion.

---

[5] *People v. Marsden*, 2 Cal. 3d 118, 125 (1970) addressed a trial court judge's obligation to hear a defendant's bases for claiming inadequate representation or ineffective assistance of counsel.

*People v. Rios*, No. H040478, 2014 WL 3529988, at *1-2 (Cal. Ct. App. July 17, 2014). The court did not explicitly address Petitioner's motion to withdraw his plea, but proceeded to sentence Petitioner to the agreed-upon 15 years.  Ans., Ex. 2, Dkt. 44-5 at 4-10.

### III.  DISCUSSION

**A.     Legal Standard**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law

was "objectively unreasonable." *Id*. at 409.

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).[6] In reviewing each claim, the court must examine the last reasoned state court decision that addressed the claim. *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013), *amended*, 733 F.3d 794 (9th Cir. 2013).

**B.    Claims and Analyses**

Petitioner raises the following two claims in this federal habeas petition:

(1)    ineffective assistance of trial counsel; and

(2)    ineffective assistance of appellate counsel in failing to raise any issues on appeal. Pet. at 1.

**1.    *Ineffective Assistance of Trial Counsel***

Petitioner claims ineffective assistance of counsel ("IAC") based on the following bases: trial counsel's (1) coercing him to take a guilty plea; (2) failing to provide the discovery to him; (3) exaggerating his exposure at trial; (4) advising him to take a guilty plea based on inadequate investigation into the discrepancies between the police report and preliminary hearing testimony; (5) advising him to take a guilty plea based on inadequate investigation into exculpatory witnesses; (6) operating with a conflict of interest; and (7) failing to represent him at the *Marsden*/plea withdrawal motion hearing.[7] Petitioner stated these IAC claims differently in various petitions to the state courts and this Court, but all were raised to both in some form.[8]

---

[6] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).

[7] He also asked this Court to stay the case in order for him to exhaust a "subclaim" regarding counsel's ineffective assistance in failing to seek severance, which this Court denied as an independent pre-plea constitutional claim. *See* Dkt. 57.

[8]    Basis (1)—*see, e.g.*, Pet., Dkt. 34 at 1 (this Court); Ans., Ex. 8, Dkt. 44-7 at 44 (habeas petition S229844 to the California Supreme Court).
Basis (2)—*see, e.g.*, Trav., Dkt. 55 at 16 (this Court); *Rios*, 2014 WL 3529988 at *2 (state appellate court).
Basis (3)—*see, e.g.*, Trav., Dkt. 55 at 11-12 (this Court); Ans., Ex. 8, Dkt. 44-7 at 44 (habeas petition S229844 to the California Supreme Court) (threatening defendant with

1    Petitioner asserts that trial counsel Phong Do

> wrongfuly encouraged petitioner to plea guilty, and coerced Rios to take a plea he would have otherwise not taken, had trial attorney Mr. Do prepared a proper defense. Trial attorney Mr. Do did not act efficiently as guaranteed by 6th and 14th Amendments of the U.S. constitution. Furthermore, trial counsel Mr. Do abandoned Rios during the course of court proceedings of his case specifically in regards to petitioners "Marsden motion hearing itself. It is evident that trial counsel was "laboring under an actual conflict" a conflict of interest between attorney and petitioner Rios [*sic*].

Pet. at 5.  He further argues, in the context of his appellate assistance claim, that trial counsel's "interest" at the *Marsden*/plea withdrawal hearing "was to protect his career as an attorney because . . . admitting that there was a conflict between himself and Petitioner . . . would put him at great risk of a lawsuit of malpractice, and instead Mr. Do took the course of degrading his client, and making him look like a liar before the court or judge." *Id.* at 11.

In his traverse, Petitioner adds that he was

> faced with either going to trial with an attorney who was ill prepared and had absolutely no interest in putting forth a case that would prove petitioners innocence and the <u>verbal</u> coercive pressure that attorney conveyed to his client Rios by telling him to take a deal – take a deal, there is a fine line between an advise and telling someone to do something. Attorney Do breached that line by constantly telling Petitioner to take the Deal! Saying to his client theres not much more you can do your in a no win predicament [*sic*].

Trav., Dkt. 55 at 11-12.  He also states: "Attorney Do failed to locate and interview percipient witness(s) for his client." *Id.* at 13.  Petitioner

> asserts the outcome would have been not guilty and or lesser

---

exaggerated sentence outcomes if petitioner goes to trial).
Basis (4)—*see, e.g.,* Pet., Dkt. 34 at 32-34 (this Court); *Rios*, 2014 WL 3529988 at *2 (state appellate court).
Basis (5)—*see, e.g.,* Pet., Dkt. 34 at 14; Trav., Dkt. 55 at 13 (this Court); Ans., Ex. 8, Dkt. 44-7 at 44 (habeas petition S229844 to the California Supreme Court).
Basis (6)—*see, e.g.,* Dkt. 34 at 5, 35 (this Court); Ans., Ex. 8, Dkt. 44-7 at 44 (habeas petition S229844 to the California Supreme Court).
Basis (7)—*see, e.g.,* Pet., Dkt. 34 at 5 (this Court); Ans., Ex. 8, Dkt. 44-7 at 44 (habeas petition S229844 to the California Supreme Court).

> charge had attorney . . . located key witness(s) who could testify in petitioners favor petitioner provided name(s) and address of witness who's house where petitioner and "v2 Jessica" spent several hours at his house and Jessica (v2) states everyone left and she stayed in the garage by herself for an hour or more. This undermines her credibility as to alleged crime of "kidnapping" petitioner holds any time they were together was upon Jessicas own free will. Witness(s) could also testify as to Jessica (v2)'s physical state and psycological state as being completely <u>normal</u>, when petitioner says psychological state he is reffering to Jessica's behavior as being <u>normal</u> and that she did not display at anytime whatsoever any conduct that would indicate she had been "raped" as she alleges." Petitioner holds that any intamite conduct that may have tooken place between the two was consentual [*sic*].

*Id.* at 14-15.

The state appellate court addressed Petitioner's trial counsel IAC claim, focusing on the fourth basis as enumerated above:

> We understand Rios's brief to be an attack on the validity of his plea on grounds of ineffective assistance of counsel . . . Rios's claim of ineffective assistance of counsel rests on the theory that significant discrepancies in the victims' statements undermined the People's case against him, such that Mr. Do provided deficient representation by encouraging Rios to accept a plea deal rather than go to trial. As noted, we perceive no significant discrepancies between the preliminary hearing testimony and the probation department's summaries of the police reports. The police reports themselves are not in the record. Thus, on the current record, Rios has failed to carry his burden to demonstrate that counsel's performance was deficient. To the extent Rios's claim of ineffective assistance of counsel is based on matters outside the record (i.e., the full police reports), it is more appropriately raised by writ of habeas corpus.

*Rios*, 2014 WL 3529988, at *2. The state appellate court also concluded that the trial court had not abused its discretion in denying Petitioner's *Marsden* motion because it was entitled to believe trial counsel's testimony that he and Petitioner discussed any inconsistencies in the record.[9] *Id.* at *3.

---

[9] The state appellate court also noted that "it is not clear from the record whether Rios obtained a certificate of probable cause. If he did not, his challenge to the validity of his plea is not reviewable." *Rios*, 2014 WL 3529988 at *2. Because the state appellate court reached the merits rather than deciding and relying on procedural default, this Court will not address the matter. *See, e.g.*, *Towery v. Schriro*, 641 F.3d 300, 312 (9th Cir. 2010) ("when state courts overlook a procedural default and decide the merits of a federal claim, federal review is not precluded.").

8

A defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must satisfy the two-part standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), by showing "that (1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)). Only constitutional issues related to trial counsel's advice regarding the plea can be considered on habeas; independent pre-plea constitutional claims cannot. "[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

First, Petitioner states he was subjected to verbal coercion but has identified no facts demonstrating the type of coercion or threats that rise to the level of a due process violation, constituting "actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742, 750 (1970). The "fine line" that Petitioner acknowledges between advice and pushiness demonstrates that counsel's conduct was not objectively unreasonable. The state appellate court recognized this in finding no error in the trial court's denial of Petitioner's *Marsden* motion for new counsel based on his allegations that Do "'wrongfully encouraged' and 'pushed' him into accepting the plea agreement." *Rios*, 2014 WL 3529988, at *2. Petitioner does not allege that a state agent threatened him with bodily harm or the manufacture of false evidence to increase his charges, *see Waley v. Johnston*, 316 U.S. 101, 102 (1942); nor criminal sanctions against family members, *see Sanchez v. United States*, 50 F.3d 1448, 1455 (9th Cir. 1995); nor that trial counsel threatened to withdraw from the case if he did not plead guilty, *see Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986), nor that a third party threatened to withdraw bail if he did not plead guilty, *see id.* at 866-67; nor that he had inadequate time to consider the plea, *see Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007).

9

Further, during the plea colloquy, Petitioner informed the trial court that he agreed with the resolution, had had sufficient time to speak with his attorney about the nature of the charges and possible defenses, and was pleading freely and voluntarily, and that no one was forcing him to enter the plea. Answer, Ex. 2, Dkt. 44-4 at 5. *See Doe*, 508 F.3d at 571 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (plea colloquy is a "formidable barrier in any subsequent collateral proceedings"). The state court reasonably determined that Petitioner was not coerced, and habeas relief is not available.

Second, Petitioner cannot prevail on an IAC claim based on trial counsel's alleged failure to provide him with the discovery in his case. Trial counsel stated at the *Marsden* hearing:

> Mr. Rios has indicated that he has failed to receive discovery. According to the notes in my file on 10-24-2012, this case was handled by Malorie Street prior to it being assigned vertically, and she requested that a redacted report be copied and sent to him. And there is also a note from the paralegal who did the work acknowledging that that was done.

Ans., Ex. 3, Dkt. 44-6 at 10. He also stated that he visited Petitioner numerous times, and "on every occasion" that he did so, they reviewed the reports together. *Id.* at 13. The state appellate court reasonably concluded that the trial court reasonably denied the *Marsden* motion by crediting trial counsel's testimony. Nothing in the record other than Petitioner's generalized claim suggests that he did not receive discovery. Habeas relief is therefore not available for any claim that failure to receive discovery rendered Petitioner's plea involuntary.

Third, Petitioner cannot prevail on a claim that trial counsel misrepresented his potential exposure at trial. In order to establish ineffective assistance from counsel's inaccurate prediction regarding the likely sentence following a guilty plea, petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (omission in original) (citing *U.S. v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990)). Trial counsel informed Petitioner that he was facing two possible life counts, for count 2 (kidnapping with intent to commit rape, California

10

Penal Code § 209) and count 4 (attempted second degree robbery, California Penal Code §§ 664, 212.5). Ans., Ex. 3, Dkt. 44-6 at 9, 12. While it is unclear how count 4 was charged in such a way that Petitioner could have been exposed to an indeterminate life sentence for it, count 2 certainly provided such exposure. Petitioner has not identified any specific way in which counsel's advice or prediction was erroneous; he focuses instead on his innocence. But it is the charges, not guilt or innocence of them, that determine exposure as a measure of risk. Petitioner's belief that he could have proven his innocence at trial does not render his counsel's advice regarding his potential exposure inaccurate or ineffective. Further, even if trial counsel provided erroneous advice about Petitioner's exposure at trial, Petitioner cannot show prejudice. "[S]ubstantial evidence" existed against him in the form of the two credible victims who testified at the preliminary hearing that Petitioner committed or attempted to commit sexual assault and other crimes against them; he likely would have pleaded guilty even with different advice. *Sophanthavong*, 378 F.3d at 871.

Fourth, the state appellate court's treatment of Petitioner's claim based on the alleged discrepancies between the police report and the preliminary hearing testimony was not unreasonable. Petitioner has not put the actual police reports in the record during his state habeas proceedings or during this proceeding.[10] He has referred only to testimony about the records at the *Marsden* hearing. Nor are the probation report summaries of the police report in the record before this Court. It does appear that there is a discrepancy between the police report and the testimony. Trial counsel stated at the *Marsden* hearing:

> The example—with regards to the that Mr. Rios alleges that is inconsistent in the police report. Prior to the court coming out on the bench, I did go over the police report with Mr. Rios. Mr. Rios indicates that in Officer Mitchell's report there's a section where Cynthia says, referring to report number 122780875, that Mr. Rios took her to the hills and raped her. I showed Mr. Rios

---

[10] He may have intended to direct the Court to the original police reports by "relat[ing] these specific information such as names of officers and their badge numbers, police reports, and page numbers containing statements victim 1 Cynthia made, detective(s) names and page numbers that Cynthia made to Goldfinger which shows she made two different statements . . . ." Trav., Dkt. 55 at 10.

> that report. There is nothing in that report where Cynthia, victim number two, alleges that. I think Mr. Rios read the report with me, all five pages, and acknowledges that there's nothing in the report that says that. Why Officer Mitchell wrote that comment in his report, he was probably under a mistaken belief. But there's nothing in the report referenced 0875 that would indicate that Cynthia said anything that was inconsistent with her prelim testimony.

Ans., Ex. 3, Dkt. 44-6 at 9-10. Petitioner describes Officer Mitchell's comment in the report:

> Officer Mitchell #4189 was one of Person(s) who made contact with Cynthia at Burger King on the night of October 12, 2012 & he states (v2) Cynthia on a prior date of Oct, 4th 2012 was picked up by Rios in a vehicle and tooken to the hills on Santa Teresa Road and then raped by Rios. This information is far from baseless as Respondent "claims" although it may be based on matters outside the record (i.e., the full police reports).

Trav., Dkt. 55 at 9-10. Whatever the specific inconsistent comment Officer Mitchell made in the report, it is evident from the record that trial counsel accounted for it in his strategy, negotiations with the prosecutor, and advice to Petitioner. Trial counsel cross-examined the two victim witnesses extensively at the preliminary hearing. Ans., Ex. 1, Dkt. 44-3 at 57-76, 77-79, 100-111. Trial counsel noted at the *Marsden* hearing that "because of how some of the evidence came out at the preliminary hearing, the offer from the district attorney dropped dramatically," from 30 to 15 years. Ans., Ex. 3, Dkt. 44-6 at 8, 9, 13. Petitioner himself acknowledges that "it is clear from the record that after the preliminary hearing District Attorney Ms. Hamiltons case had in fact <u>weakened</u>." Trav., Dkt. 55 at 12. The state appellate court reasonably credited trial counsel's statements at the hearing to conclude that his performance was not deficient, and habeas relief is not available.

Fifth, Petitioner cannot prevail on his claim that trial counsel "conduct[ed] inefficient investigation to contact defense witnesses for a favorable defense for petitioner." Pet., Dkt. 34 at 14. Petitioner refers to witnesses who could testify that victim two, Jessica, stayed at the house where he brought her for an hour in the garage by herself, and that her mental state seemed normal and did not indicate that she had experienced rape. *See supra* at 7. The testimony Petitioner describes would not have been inconsistent with or undermined Jessica's testimony at the preliminary hearing. Jessica testified that

1   Petitioner left her in his car at his friend's house and she did not leave. Ans., Ex. 1, Dkt.
2   44-3 at 53-54. She also testified that, prior to Petitioner taking her to his friend's house,
3   she was in a state of "shock" and "didn't have any emotion." *Id.* at 51. While it could
4   have been useful for trial counsel to interview Petitioner's friends or called them to testify
5   in the event they had proceeded to trial, the friends' version of events would not have
6   changed counsel's advice with respect to Petitioner's plea, nor the likelihood that
7   Petitioner would have taken the plea.

8   Sixth, Petitioner alleges that trial counsel had an actual conflict of interest. He cites
9   *Lopez v. Scully*, 58 F.3d 38, 43 (2d Cir. 1995), where a habeas petitioner was entitled to be
10  resentenced with new counsel because of his counsel's ineffectiveness at sentencing, in
11  failing to argue for leniency, where the petitioner had previously accused trial counsel of
12  misconduct. Petitioner alleges, based on *Lopez*, that at the *Marsden*/plea withdrawal
13  hearing, trial counsel had a conflict because his interest was in representing that he had not
14  performed deficiently, contrary to Petitioner's allegations that he had. Trav., Dkt. 55 at
15  17-19. But any conflict related to Petitioner's allegation of ineffective assistance arose
16  after Petitioner entered his plea, and does not undermine the voluntariness of the plea. The
17  only conflict of interest Petitioner identifies as having existed prior to the *Marsden* hearing
18  in his case is counsel's "lack of preperal [sic] [for] trial." Trav., Attachment, Dkt. 55-1 at
19  42. The fact that trial counsel had not yet prepared for trial, as Petitioner had not told
20  counsel that he intended to go to trial, does not constitute a conflict of interest. An "actual
21  conflict" is "a conflict that adversely affects counsel's performance" and not a "mere
22  theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171-72 & n.5 (2002).
23  Not being prepared for trial, at a time when there is no trial scheduled, is not such a
24  conflict. If the additional labor involved in going to trial constituted a per se conflict of
25  interest between attorney and defendant, no plea could ever be constitutionally sound.

26  Seventh, Petitioner challenges trial counsel's "abandon[ment]" of him at the
27  *Marsden* hearing. Pet., Dkt. 34 at 5. He states that counsel "discredited" him and "left
28  [Petitioner's] claims of conflict of interest . . . in the hands of the court after denying"

13

Petitioner's allegations. Trav., Dkt. 55 at 19. *Marsden* and *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982), which articulates a parallel federal rule, require that, when a defendant requests substitution of counsel, a "trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." *Hudson*, 686 F.2d at 829. It is the judge who must conduct the inquiry; defendant is not automatically entitled to separate counsel to represent him in his request for substitution. The Ninth Circuit has "suggested that separate counsel may be warranted, for purposes of [a motion to substitute counsel], where current counsel fails to assist the defendant in making the motion or takes an adversarial and antagonistic stance regarding the motion." *Stenson v. Lambert*, 504 F.3d 873, 888 (9th Cir. 2007). The record demonstrates that Petitioner's trial counsel was not antagonistic at the *Marsden* hearing; he informed the court that the "tension" between himself and Petitioner was "news to [him]" and he "[did] not feel the same way." Ans., Ex. 3, Dkt. 44-6 at 10. The state appellate court reasonably credited trial counsel's statements at the *Marsden* hearing, and habeas relief is not available based on the trial court's refusal to substitute counsel or based on trial counsel's representation of Petitioner at the hearing.

Because Petitioner has not demonstrated any ineffective assistance of trial counsel impacting his plea, his first claim is therefore DENIED on the merits.

**2. Ineffective Assistance of Appellate Counsel**

Petitioner claims that his appointed appellate counsel provided ineffective assistance by "fail[ing] to raise the obvious grounds of Petitioner's" trial counsel IAC claim. Trav., Dkt. 55 at 6. To determine whether appellate counsel's failure to raise a claim of ineffective assistance of trial counsel was objectively unreasonable and prejudicial, the district court must first assess the merits of the underlying claim that trial counsel provided constitutionally deficient performance. *Moormann v. Ryan*, 628 F.3d 1102, 1106-07 (9th Cir. 2010). If trial counsel's performance was not objectively unreasonable or did not prejudice the petitioner, then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and

the petitioner was not prejudiced by appellate counsel's omission. *Id.*

The Supreme Court has held that California's "*Wende* procedure reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal" and meets the requirements of the Fourteenth Amendment. *Smith v. Robbins*, 528 U.S. 259, 278–79 (2000). Although the procedure is not inherently constitutional, appellate counsel does not automatically provide effective assistance by following it. *Id.* at 285. The *Strickland* standard controls. *Id.* A petitioner alleging ineffective assistance by appellate counsel in filing a *Wende* brief must demonstrate, first, "that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and, second, "that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

Petitioner does not meet either *Strickland* prong. Petitioner's arguments that trial counsel was ineffective boil down to frustration that counsel advised him to take a plea deal rather than go to trial; appellate counsel did not unreasonably fail to raise the claims in a merits brief. *See Iaea*, 800 F.2d at 867 ("[m]ere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion"). Nor was the state appellate court unreasonable in "conclud[ing] there is no arguable issue on appeal." *Rios*, 2014 WL 3529988 at *3. Further, even if appellate counsel erred in failing to raise Petitioner's trial IAC claims, Petitioner cannot demonstrate prejudice because he would not have prevailed on any of those claims, as discussed above. *See supra* at 6-14. The state appellate court did consider whether counsel was ineffective, and concluded that he was not. Petitioner's second claim is therefore DENIED on the merits.[11]

---

[11] Petitioner's request for an evidentiary hearing is denied. "A petitioner is only entitled to an evidentiary hearing in federal district court if he alleges facts that, if proven, 'would entitle the applicant to federal habeas relief.'" *Atlas v. Arnold*, No. 20-55452, 2021 WL 3422794, at *2 (9th Cir. Aug. 5, 2021) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474, (2007)). A hearing is not required where "the record refutes the applicant's factual allegations or otherwise precludes habeas relief," or where the "issues . . . can be resolved by reference to the state court record." *Id.* As described above, the issues in this case can be decided by reference to the state court record; no facts alleged by Petitioner outside the

15

## IV.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall enter judgment in favor of Respondent and close the file.

Additionally, the clerk is directed to substitute Ron Godwin on the docket as the respondent in this action.  *See supra* at 1, fn. 1.

**IT IS SO ORDERED**.

Dated: _September 13, 2021_____

BETH LABSON FREEMAN
United States District Judge

---

state court record would entitle him to relief.